UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLINE ROBERTA PEREZ, <br> Plaintiff, <br> v. <br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br> Defendant. | Case No. EDCV 13-1498-OP <br><br> MEMORANDUM OPINION AND ORDER |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (ECF Nos. 7, 9.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g). (ECF No. 11 at 3.)

1

# I.
# **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1) Whether the Administrative Law Judge ("ALJ") properly considered the opinions of treating physician Mukesh M. Patel, M.D.;

(2) Whether the ALJ properly considered Plaintiff's credibility; and

(3) Whether the ALJ properly considered the testimony of Plaintiff's daughter, Louisa Perez.

(JS at 2-3.)

# II.
# **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /
/ / /

# III.

# DISCUSSION

## A. The ALJ's Findings.

The ALJ found that Plaintiff has the following severe impairments: congenital heart disease, with ventricular defect repair; bicuspid aortic valve that resulted in bacterial infection, treated by aortic valve replacement; degenerative disc disease of the neck and low back; cervical neck fusion, with cervicalgia (chronic neck pain); bilateral carpal tunnel syndrome; and depressive disorder, not otherwise specified. (Administrative Record ("AR") at 21.)

The ALJ concluded that Plaintiff retains the residual functional capacity ("RFC") to perform less than the full range of light work as follows: can lift and/or carry ten pounds frequently and twenty pounds occasionally; can sit, stand, and/or walk six hours in an eight-hour workday, with normal breaks every two hours; can occasionally stoop and bend; cannot perform forceful gripping, grasping or twisting, but can do frequent fine manipulation, such as keyboarding, and gross manipulation, such as opening drawers and carrying files; can climb stairs, but not climb ladders, work at heights, or balance; can do occasional neck motion but should avoid extremes of motion, her head should be held at a comfortable position at other times and she can maintain a fixed head position occasionally for fifteen to thirty minutes at a time; and is limited to simple, repetitive tasks in a nonpublic setting. (Id. at 22.)

To determine the extent to which Plaintiff's limitations eroded her ability to perform the unskilled light occupational base, the ALJ asked the vocational expert ("VE") whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (Id. at 31.) Based on the testimony of the VE, the ALJ determined Plaintiff could make a successful adjustment to other work that exists in significant numbers in the national economy such as mail clerk (Dictionary of Occupational Titles ("DOT") No.

209.687-026); garment sorter (DOT No. 222.687-014); and cleaner (DOT No. 323.687-014). (AR at 31.)

The ALJ determined that Plaintiff has not been under a disability as defined by the Social Security Act. (Id.)

**B.  Treating Physician.**

Plaintiff contends that the ALJ erred in giving no weight to the opinions of her treating physician, Dr. Patel, who is Plaintiff's primary care physician and cardiologist. (Id. at 188-89.) She first saw him in about 1989 (id. at 188, 268),[3] and then began seeing him again in 2006 or 2007; she was still seeing him regularly in 2012. (See, e.g., id. at 59, 390, 394, 417.)

In June 2009, Dr. Patel stated that Plaintiff was advised to work only four days a week "due to medical problems until further advised." (Id. at 410.) On September 3, 2009, Dr. Patel stated that Plaintiff had to be off work every Tuesday due to medical reasons. (Id. at 358, 406.) On March 8, 2010, Dr. Patel certified that Plaintiff was medically unfit to serve as a juror due to her use of anticoagulants. (Id. at 355.)

On March 15, 2011, Dr. Patel prepared a report in which he indicated that Plaintiff could lift less than ten pounds frequently or occasionally, sit or stand less than two hours, and would need a sit/stand/walk option at between five and ten minute intervals. (Id. at 518.) He based these opinions on Plaintiff's "spinal stenosis, arthritis, neuropathy, carpal tunnel syndrome." (Id. at 519.) He indicated some postural limitations, including limitations in reaching, gross manipulation, fine manipulation, feeling, and pushing/pulling, based on Plaintiff's "spinal stenosis, neuropathy, carpal tunnel." (Id.) He also indicated she was precluded from numerous environmental conditions due to her "arthritis,

---

[3] Dr. Patel reports that he ad been treating Plaintiff for "almost the last 18 years." (AR at 268.)

heart valve replacement, CAD, [and] lumbosacral pain." (Id. at 520.) He stated that she could not work. (Id.)

The ALJ rejected those opinions:

> Dr. Patel concluded the claimant was unable to work. The undersigned finds this conclusion has no probative value and rejects it. As an opinion on an issue reserved to the Commissioner, this statement is not entitled to controlling weight and is not given special significance pursuant to 20 CFR 404.1527(e) and SSR 96-5. In a *Medical Opinion Re: Ability to Do Work-Related Activities (Physical)*, dated March 15, 2011, Dr. Patel assessed functional limitations that would preclude the claimant from working at the level of substantial gainful activity. Dr. Patel did not provide an explanation for this assessment and he did not provide objective clinical or diagnostic findings to support the functional assessment. This checklist-style form appears to have been completed as an accommodation to the claimant and includes only conclusions regarding functional limitations without any rationale for those conclusions. Moreover, Dr. Patel's opinion appears to rely in part on an assessment of impairments for which the claimant received no treatment from him. Thus the undersigned has given little weight to this opinion because it is not supported by objective evidence and it is inconsistent with the record as a whole.

(Id. at 28 (citations omitted).)

It is well established in the Ninth Circuit that a treating physician's opinion is entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). In addition, more weight is generally given to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a

specialist. See 20 C.F.R. § 404.1527(d)(5). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(d), 416.927(d). Where the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, as will be assumed to be the case here, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Thomas, 278 F.3d at 957 (citation omitted) (internal quotation omitted).

      Preliminarily, the ALJ noted that Dr. Patel's opinion on the ultimate issue of whether Plaintiff was able to work had "no probative value" as that is "an opinion on an issue reserved to the Commissioner." (AR at 28.) The Court notes that the fact that a treating physician has rendered an opinion that can be characterized as an opinion on the ultimate issue of disability does not relieve the Commissioner of the obligation to state specific and legitimate reasons for rejecting it. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).

      In addition, the ALJ rejected Dr. Patel's opinions because although Dr. Patel assessed limitations that would preclude Plaintiff from working, he did not provide either "an explanation" or "objective clinical or diagnostic findings to

support the functional assessment," and includes "only conclusions regarding functional limitations without any rationale for those conclusions." (AR at 28.) The Court disagrees. Dr. Patel specifically stated that the medical findings that support his assessed limitations were Plaiintiff's spinal stenosis, arthritis, neuropathy, and carpal tunnel. (Id. at 519.) He found that Plaintiff's reaching, handling, fingering, feeling, and pushing/pulling were similarly affected by those conditions and stated that a CT scan supported his findings. (Id.) Finally, he restricted her from all exposure to extreme heat or cold, wetness, humidity, noise, fumes, and hazards, based on her arthritis, heart valve replacement, CAD (coronary artery disease),[4] and lumbrosacral pain. (Id. at 520.) Thus, the ALJ's reason, while specific, is not supported by the record and, therefore, is not legitimate.

      The ALJ also rejected Dr. Patel's opinion because the "checklist-style form appears to have been completed as an accommodation to the claimant." (Id. at 28.) There are two issues here. First, the ALJ noted that Dr. Patel may have completed these forms as an accommodation to Plaintiff. Without more, however, this reason may not be sufficiently specific or legitimate. See Lester, 81 F.3d at 832 ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits." (quoting Ratto v. Sec'y, Dept. of Health and Human Servs., 839 F. Supp. 1415, 1426 (D. Or. 1993))); see also Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (citing Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996)) (the source of report is a factor that justifies

---

    [4] As noted by Plaintiff, this term is uncertain and could mean either cervical arthritic disease, or coronary artery disease. (JS at 14.) However, the results of a "CAD Exam" in June 2008 showed "RT ICA 16-49% stenosis. LFT ICA 49-60% stenosis." (See, e.g., AR at 431.) These findings reflect stenosis of an intracranial vessel such as an artery, indicating that CAD in all likelihood refers to coronary artery disease.

rejection only if there is evidence of actual impropriety or no medical basis for opinion). Here, the record contains no evidence that Dr. Patel deliberately embellished his assessment of Plaintiff's limitations in order to assist her with her benefits claim. See Reddick v. Chater, 157 F.3d 715, 725-26 (9th Cir. 1998) (ALJ erred in assuming that the treating physician's opinion was less credible because his job was to be supportive of the patient). Second, the ALJ refers to the report as a "checklist-style form." (AR at 28.) While an ALJ may reject check-off forms that do not contain an explanation of the bases for their conclusions, Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996), as previously discussed, Dr. Patel *did* include the medical findings and at least one test (CT Scan) that supported his opinion. Therefore, this is not a specific and legitimate reason for discounting Dr. Patel's opinion.

      The ALJ also stated that "Dr. Patel's opinion appears to rely in part on an assessment of impairments for which the claimant received no treatment from him." (AR at 28.) While this may be true in part, Dr. Patel is Plaintiff's primary care physician as well as her cardiologist. Throughout his treatment of her, he has not only treated her directly, prescribing various narcotic and other pain relievers over time to Plaintiff (see e.g., JS at 21 (citations omitted)), but he has referred her to other specialists. These specialists included Dr. Sanford, a neurologist who order a cervical CT scan and diagnosed cervical myofascial pain (AR at 338); Dr. Park, a pain specialist who adjusted Plaintiff's medication (id. at 215, 422-23); and Dr. Thakran, who performed a 2010 cervical EMG/Nerve conduction study that demonstrated cervical radiculopathy and carpal tunnel syndrome, and then suggested adjusting Plaintiff's medication, sent her to physical therapy, and later conducted a second EMG/Nerve conduction study (id. at 461, 477-516). These doctors generally appear to have reported their findings to Dr. Patel who would seem, therefore, as Plaintiff's primary care physician, to be in a position to comment on Plaintiff's overall medical record. (See, e.g., id. at

338-39, 423.) Again, therefore, this reason given by the ALJ for discounting Dr. Patel's opinions, while specific, is not legitimate.

The ALJ gave great weight to the opinions of the non-examining medical expert who testified at the hearing, Samuel Landau, M.D. (Id. at 47-59.) He stated that "specifically, Dr. Landau is a Board certified in internal medicine and cardiovascular diseases, he has an awareness of all the medical evidence in the record, and he understands Social Security disability programs and requirements." (Id. at 27.) As noted by Plaintiff, Dr. Patel is also certified in internal medicine and cardiology, and was generally the one who developed the extensive treatment record. (See JS at 25.)

When considering the findings of a nontreating physician, because a nonexamining source has "no examining or treating relationship" with the claimant, the weight given to his opinion, at least in part, "will depend on the degree to which [he] provide[s] supporting explanations" for his opinion. 20 C.F.R. § 404.1527(c)(3). In this case, the Court does not find Dr. Landau's explanations at the hearing to be sufficient to support the weight given to them by the ALJ.

In April 2009, Plaintiff was hospitalized for an aortic valve replacement. (AR at 25 (citation omitted).) Dr. Landau found that Plaintiff met a medical listing from August 17, 2008, (the date Plaintiff had a brain MRI that showed "a nonspecific white matter region," that was "coming from these growths on her aortic valve" (id. at 53)), through August 17, 2009, choosing this ending date so as to "give her a time to recuperate" from the surgery and hospitalization related to her tricuspid valve repair. (Id. at 53.)

In discussing his other opinions, however, Dr. Landau's testimony seems often unclear and ambiguous. For instance, when asked by the ALJ whether he had considered Plaintiff's peripheral neuropathy as a diagnosis, Dr. Landau responded the he didn't see it in the physical examinations, then stated, "I didn't

find any critical evidence that this was of any significance in her hips." (Id.) He then continues:

> . . . Especially the upper extremity diagnosis shows bilateral carpal tunnel syndrome and no radiculopathy. That's the one in 8F – . . . later. . . . Do we have another one? I don't think so. . . . Oh, right, there it is. It's the one that was [INAUDIBLE]. Yes. So I don't really know what to do with that because you have one that was negative and one that shows additional problem that is probably [INAUDIBLE]. and additionally the L4, the neuropathy would limit her. Well, actually, I didn't add that to the diagnosis. I should add the degenerative disc disease and congenital neck vertical fusion. [INAUDIBLE] also the same thing with the lower back, I should have added that to the lower back.

(Id. at 54.) When asked by Plaintiff's counsel about Plaintiff's lumbar spine diagnosis, Dr. Landau responded:

> Well, I don't have an x-ray. Well, let's see, do I have a x-ray? No. I have to assume it was degenerative disc disease because the electro diagnostic study that was faxed to me, the one that was done recently, showed a chronic L4 radiculopathy on both sides. So I have no other diagnosis on that. But the examinations don't show anything. [¶] I'm getting another phone call.[5] Hold on a second.

(Id. at 55.)

In reviewing Dr. Sanford's records, Dr. Landau states that, "[i]n 2010, [Dr. Sanford] diagnoses mostly neck myofascial pain and says [Plaintiff's] neck x-rays show only degenerative disc disease. There isn't actually pain there in the upper

---

[5] This was the third telephone call Dr. Landau received during the course of his testimony. (See AR at 51, 52, 55.)

extremity, upper extremity [INAUDIBLE] study. It says bilateral carpal tunnel syndrome and no maculopathy."[6] (Id. at 50.) He also sites to records that show that Plaintiff was seen in "pain management," had a positive EMG/Nerve conduction study of the upper extremities, and had undergone physical therapy. (Id.) Thus, his comment that some unspecified study showed no pain in the upper extremity is ambiguous at best.

Likewise, after stating that there was no evidence in the physical records of neuropathy in Plaintiff's feet (id. at 53), Dr. Landau later stated:

Q . . . With the distal neuropathy, and I'm sorry is that located then – are we talking feet or hands or both?

A No, no. The study was a lower extremity study, just her hand – well it appears on the carpal tunnel syndrome.

Q Okay. And then the distal neuropathy –

A The distal neuropathy is in her lower extremities.

(Id. at 58.)

Dr. Landau also offered conflicting statements regarding whether Plaintiff's neuropathy would limit her. (Compare id. at 53-54 (stating there was no evidence of peripheral neuropathy in her legs or feet and "it's not seen in the physical examinations and wouldn't alter the limitations either") with id. at 54 (stating that he had not considered the positive study and that "the L4, the neuropathy would limit her").)

The ALJ's failure to provide specific and legitimate reasons for discounting Dr. Patel's opinions, coupled with Dr. Landau's ambiguous and often conflicting

---

[6] Plaintiff notes that this is probably a transcription error for "radiculopathy." (JS at 25.) Plaintiff is probably correct as radiculopathy refers to a condition of a nerve root, while maculopathy refers to a condition of the retina. In any event, this transcription error merely compounds the already disjointed testimony.

testimony, warrants remand. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) (in disregarding the findings of a treating physician, the ALJ must "provide detailed, reasoned and legitimate rationales" and must relate any "objective factors" he identifies to "the specific medical opinions and findings he rejects"); see, e.g., Nelson v. Barnhart, No. C 00-2986 MMC, 2003 WL 297738, at *4 (N.D. Cal. Feb. 4, 2003) ("Where an ALJ fails to 'give sufficiently specific reasons for rejecting the conclusion of [a physician],' it is proper to remand the matter for 'proper consideration of the physicians' evidence.'") (citation omitted). Accordingly, remand is required for the ALJ to set forth legally sufficient reasons for rejecting the opinions of Dr. Patel, if the ALJ again determines rejection is warranted.[7]

Based on the foregoing, on remand the ALJ should reconsider the medical evidence, including Dr. Landau's testimony, and provide specific and legitimate reasons for rejecting the opinions of Dr. Patel, assuming the ALJ again determines that to be appropriate.

**C.  Credibility of Plaintiff.**

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective complaints. (JS at 35.) Specifically, the ALJ found Plaintiff's allegations "not fully credible."

First, the ALJ notes that Plaintiff testified she fell often and had numbness in her feet, "and her doctor told her this may be to diabetes, but there is no evidence to support this in the record." (AR at 23.) It is unclear what the ALJ hoped to find in the record to support Plaintiff's statements – evidence of falling? evidence of numbness in her feet? evidence of diabetes? evidence of a doctor telling her this? The Court assumes the ALJ is referring to a lack of evidence of diabetes in the record, but also notes that Plaintiff's full statement at the hearing

---

[7] The Court expresses no view on the merits.

included the fact that "Dr. Zacherman,"[8] who performed Plaintiff's EMG studies, also told her that "sometimes diabetes doesn't show right away." (Id. at 60.) Thus, the fact that there is no evidence of diabetes in the record, or a doctor telling Plaintiff she might have diabetes, would not be surprising.

The ALJ also states that despite Plaintiff's "alleged impairments . . . she has no driving limitations from any doctor and she drives occasionally"; she has "not generally received the type of medical treatment one would expect given the alleged severity of her symptoms";[9] her "description of the severity of the pain has been so extreme as to appear implausible"; Plaintiff's "generally unpersuasive appearance and demeanor while testifying" was another factor used in discounting her credibility; and, although Plaintiff stated she has to lie down every half hour, "she was able to sit for over forty-five minutes while in the hearing, she is able to go to the grocery store, and she goes to her mother's house." (Id. at 23-24.)

Because the Court finds this action must be remanded for further consideration of the medical record as discussed above, the Court declines to rule on the sufficiency of the foregoing reasons for discounting Plaintiff's credibility, although notes that some of them seem a bit "thin." Upon remand the ALJ should reconsider Plaintiff's credibility and set forth legally sufficient reasons for discounting Plaintiff's credibility, if the ALJ again determines that is warranted.

**D.     Lay Witness Testimony.**

The ALJ gave three reasons for rejecting the statements of Plaintiff's

---

[8] The Court does not find Dr. Zacherman's name in the record. However, it appears that Purnia Thakran, M.D., Ph.D. may have been the one Plaintiff was referring to. (See, e.g., AR at 344-46.)

[9] The record shows that because of Plaintiff's heart condition and use of Coumadin, her treatment options for her conditions are limited, e.g., surgery is not a viable option. (Id. at 338.)

daughter: (1) the daughter's opinions appeared to be "no more than a parroting of the subjective complaints already testified to by the claimant"; (2) because the opinion of a lay person is less persuasive than medical opinions; (2) as Plaintiff's daughter, the witness was "not unbiased"; and (3) the daughter's opinion was not supported by clinical or diagnostic medical evidence. (Id. at 24.)

Because the Court finds this action must be remanded for further consideration of the medical record and Plaintiff's credibility as discussed above, the Court declines to rule on the sufficiency of the foregoing reasons for discounting Plaintiff's daughter's statements. However, upon remand the ALJ should reconsider Plaintiff's daughter's statements and set forth legally sufficient reasons for discounting those statements if the ALJ again determines that is warranted.

### E. This Case Should Be Remanded for Further Proceedings.

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. See, e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister, 888 F.2d at 603; Lewin, 654 F.2d at 635. Remand is warranted where additional administrative proceedings could remedy defects in the decision. Lewin, 654 F.2d at 635.

The Court finds that the ALJ committed legal error by not providing legally sufficient reasons for rejecting the opinions of Plaintiff's treating physician and giving significant weight to the opinions of non-treating non-examining physician, Dr. Landau.

It appears to the Court that this is an instance where further administrative proceedings would serve a useful purpose and remedy defects. Accordingly, this action must be remanded to allow the ALJ to properly consider the opinion of Plaintiff's treating physician, the testimony presented by Dr. Landau, and Plaintiff's and her daughter's subjective complaints of impairment, and to provide

legally sufficient reasons for rejection if the ALJ again determines rejection is warranted.[10]

## IV.

## **ORDER**

Based on the foregoing, IT IS THEREFORE ORDERED, that judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

Dated: May 13, 2014

HONORABLE OSWALD PARADA
United States Magistrate Judge

---

[10] The Court expresses no view on the merits.